VANCE D. DAY
339 WASHINGTON SE
SALEM, OR
97302
(503) 399-2667

**Attorney for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    )
                                             )    CR No. 05-60 BR
                   Plaintiff,                )
                                             )
        vs.                                  )    **PETITION TO ENTER PLEA**
                                             )    **OF GUILTY, CERTIFICATE**
Family Medical Management                    )    **OF COUNSEL, AND ORDER**
        Services, Inc.                       )    **ENTERING PLEA.**
                   Defendant.                )

The defendant represents to the court:

1.    My name is _Family Medical Manag. Ser. Inc._ I am _N/A_ years
old.  I have gone to school up to and including the _____N/A_____ .

2.    My attorney is _Vance D. Day_ .

3.    My attorney and I have discussed my case fully.  I have received a copy of the
Indictment or Information.  I have read the Indictment or Information, or it has been read to me, and
I have discussed it with my attorney.  My attorney has counseled and advised me concerning the
nature of each charge, any lesser-included offense(s), and the possible defenses that I might have in

**Page 1 - PETITION TO ENTER PLEA OF GUILTY**
**Revised 8/97**

this case.  I have been ad___ed and understand that the elements of the charge(s) alleged against me

to   which   I   am   pleading   "GUILTY"   are   as   follows   [*see*   instructions]:

*please see plea Agreement*

I have had a full and adequate opportunity to disclose to my attorney all facts known to me that relate

to my case.

4.    I know that if I plead "GUILTY," I will have to answer any questions that the judge

asks me about the offense(s) to which I am pleading guilty.  I also know that if I answer falsely, under

oath, and in the presence of my attorney, my answers could be used against me in a prosecution for

perjury or false statement.

5.    I am not under the influence of alcohol or drugs.  I am not suffering from any injury,

illness or disability affecting my thinking or my ability to reason except as follows:

*N/A* . I have not

taken any drugs or medications within the past seven (7) days except as follows:

*N/A*

6.    I understand that conviction of a crime can result in consequences in addition to

imprisonment.  Such consequences include deportation, or removal from the United States, or denial

of naturalization, if I am not a United States citizen; loss of eligibility to receive federal benefits; loss

of certain civil rights (which may be temporary or permanent depending on applicable state or federal

law), such as the right to vote, to hold public office, and to possess a firearm; and loss of the privilege

to engage in certain occupations licensed by the state or federal government.

**Page 2 - PETITION TO ENTER PLEA OF GUILTY**
**Revised 8/97**

7.    I know that I may plead "NOT GUILTY" to any crime charged against me and that I may persist in that plea if it has already been made.  I know that if I plead "NOT GUILTY" the Constitution guarantees me:

    a.    The right to a speedy and public trial by jury, during which I will be presumed to be innocent unless and until I am proven guilty by the government beyond a reasonable doubt and by the unanimous vote of twelve jurors;

    b.    The right to have the assistance of an attorney at all stages of the proceedings;

    c.    The right to use the power and process of the court to compel the production of evidence, including the attendance of witnesses in my favor;

    d.    The right to see, hear, confront, and cross-examine all witnesses called to testify against me;

    e.    The right to decide for myself whether to take the witness stand and testify, and if I decide not to take the witness stand, I understand that no inference of guilt may be drawn from this decision; and

    f.    The right not to be compelled to incriminate myself.

8.    I know that if I plead "GUILTY" there will be no trial before either a judge or a jury, and that I will not be able to appeal from the judge's denial of any pretrial motions I may have filed concerning matters or issues not related to the court's jurisdiction [*see* instructions].

**Page 3 - PETITION TO ENTER PLEA OF GUILTY**
**Revised 8/97**

9.      In this case I am pleading "GUILTY" under Rule 11(e)(1)(*B*).  My attorney has explained the effect of my plea under Rule 11(e)(1)(*B*) to be as follows [*see* instructions]:

*IF THE JUDGE IMPOSES A SENTENCE DIFFERENT FROM WHAT THE CORPORATION EXPECTS TO RECEIVE UNDER THE TERMS OF THE PLEA, THE CORPORATION DOES NOT HAVE A RIGHT TO WITHDRAW THE PLEA.*

10.      I know the maximum sentence which can be imposed upon me for the crime(s) to which I am pleading guilty is ___0___ imprisonment and a fine of $ _500,000.00_. I also know there is a mandatory minimum sentence of ___0___ years imprisonment.

11.      I know that the judge, in addition to any other penalty, will order a special assessment as provided by law in the amount of $ _400.00_ per count of conviction.

12.      I know that if I am ordered to pay a fine, and I willfully refuse to pay that fine, I can be returned to court, where the amount of the unpaid balance owed on the fine can be substantially increased by the judge and I can be imprisoned for up to one year.

13.      My attorney has discussed with me the Federal Sentencing Guidelines.  I know that under the Federal Sentencing Guidelines, the sentencing judge will ordinarily select a sentence from within the guideline range.  If, however, a case presents unusual facts or other circumstances, the law permits the judge to depart from the guidelines and impose a sentence either above or below the guideline range.  Although most sentences will be imposed within the guideline range, I know that there is no guarantee that my sentence will be within the guideline range.  If my attorney or any other person has calculated a guideline range for me, I know that this is only a prediction and that it is the

judge who makes the fir    decision as to what the guideline range is and what sentence will be imposed. I also know that a judge may not impose a sentence greater than the maximum sentence referred to in paragraph (10) above.

14.    I know from discussion with my attorney that, under the Federal Sentencing Guidelines, if I am sentenced to prison I am not entitled to parole. I will have to serve the full sentence imposed except for any credit for good behavior that I earn. I can earn credit for good behavior in prison at a rate of up to 54 days for each year of imprisonment served. Credit for good behavior does not apply to a sentence of one year or less.

15.    I know that if I am sentenced to prison, the judge will impose a term of supervised release to follow the prison sentence. During my supervised release term I will be supervised by a probation officer according to terms and conditions set by the judge. In my case, a term of supervised release can be _N/A_ to _N/A_ years. If I violate the conditions of supervised release, I may be sent back to prison for up to _N/A_ year(s) [*see* instructions].

16.    I know that in addition to or in lieu of any other penalty, the judge can order restitution payments to any victim of any offense to which I plead guilty. I am also informed that, for certain crimes of violence and crimes involving fraud or deceit, it is mandatory that the judge impose restitution in the full amount of any financial loss or harm caused by an offense. If imposed, the victim can use the order of restitution to obtain a civil judgment lien. A restitution order can be enforced by the United States for up to twenty (20) years from the date of my release from imprisonment, or, if I am not imprisoned, twenty (20) years from the date of the entry of judgment. If I willfully refuse to pay restitution as ordered, a judge may resentence me to any sentence which could originally have been imposed.

**Page 5 - PETITION TO ENTER PLEA OF GUILTY**
**Revised 8/97**

17.    On any fine or restitution in an amount of $2,500 or more, I know that I will be required to pay interest unless that fine or restitution is paid within fifteen (15) days from the date of the entry of judgment.

18.    If I am on probation, parole, or supervised release in any other state or federal case, I know that by pleading guilty in this court my probation, parole or supervised release may be revoked and I may be required to serve time in that case, which may be consecutive, that is, in addition to any sentence imposed on me in this court.

19.    If I have another case pending in any state or federal court, I know that my Petition and Plea Agreement in this case do not, in the absence of an express and written agreement, apply to my other case(s), and that I can be faced with consecutive sentences of imprisonment.

20.    My plea of "GUILTY" is based on a Plea Agreement that I have made with the prosecutor. That Plea Agreement is attached hereto and incorporated herein. I have read or had read to me the Plea Agreement, and I understand the Plea Agreement.

21.    The Plea Agreement contains the only agreement between the United States government and me. No officer or agent of any branch of government (federal, state or local) or anyone else has promised or suggested that I will receive a lesser term of imprisonment, or probation, or any other form of leniency if I plead "GUILTY" except as stated in the Plea Agreement. I understand that I cannot rely on any promise or suggestion made to me by a government agent or officer which is not stated in writing in the Plea Agreement, or which is not presented to the judge in my presence in open court at the time of the entry of my plea of guilty.

22.    My plea of "GUILTY" is not the result of force, threat, or intimidation.

**Page 6 - PETITION TO ENTER PLEA OF GUILTY**
**Revised 8/97**

23. I hereby request that the judge accept my plea of "GUILTY" to the following count(s):

*Counts I & II*

24. I know that the judge must be satisfied that a crime occurred and that I committed that crime before my plea of "GUILTY" can be accepted. With respect to the charge(s) to which I am pleading guilty, I represent that I did the following acts and that the following facts are true [*see* instructions]:

*THE CORPORATION UNDERTOOK A SCHEME TO DEFRAUD BOTH MEDICARE AND TRICARE, IN THAT, THE CORPORATION SYSTEMATICALLY CLAIMED REIMBURSEMENT FOR HEALTH SERVICES STATING THAT A MEDICAL DOCTOR HAD PROVIDED THE SERVICE WHEN IN FACT THE SERVICES HAD BEEN PROVIDED BY A NURSE PRACTITIONER OR A PHYSICIAN ASSISTANT. THE CORPORATION KNEW IT WOULD BE REIMBURSED AT A HIGHER RATE.*

25. I offer my plea of "GUILTY" freely and voluntarily and of my own accord and with a full understanding of the allegations set forth in the Indictment or Information, and with a full understanding of the statements set forth in this Petition and in the Certificate of my attorney that is attached to this Petition.

SIGNED by me in the presence of my attorney, after reading (or having had read to me) all of the foregoing pages and paragraphs of this Petition on this *1st* day of *March*, ~~199 :~~ *2005*

_____
Defendant

*VANCE D. DAY*
*ATTORNEY FOR CORPORATION*
*DEFENDANT*

**Page 7 - PETITION TO ENTER PLEA OF GUILTY**

## CERTIFICATE OF COUNSEL

The undersigned, as attorney for defendant *Family Medica*, hereby certifies:

1.    I have fully explained to the defendant the allegations contained in the Indictment or Information in this case, any lesser-included offense(s), and the possible defenses which may apply in this case.

2.    I have personally examined the attached Petition To Enter Plea of Guilty And Order Entering Plea, explained all its provisions to the defendant, and discussed fully with the defendant all matters described and referred to in the Petition.

3.    I have explained to the defendant the maximum penalty and other consequences of entering a plea of guilty described in paragraphs (6)-(20) of the Petition, and I have also explained to the defendant the applicable Federal Sentencing Guidelines.

4.    I recommend that the Court accept the defendant's plea of "GUILTY."

SIGNED by me in the presence of the above-named defendant, and after full discussion with the defendant of the contents of the Petition To Enter Plea of Guilty, and any Plea Agreement, on this *1st* day of *MARCH*, 199 *2005*

_____
Attorney for Defendant

**Page 8 - CERTIFICATE OF COUNSEL**



**U.S. Departme⸍ ⸍ of Justice**

*United States Attorney*
*District of Oregon*
*1000 S.W. Third Avenue, Suite 600*
*Portland, OR 97204-2902*

*Office: (503)727-1128*
*Fax: (503) 727-1117*
*DwightHolton@usdoj.gov*

---

February 23, 2005

Mr. Vance Day Esq.
Family Medical Management Services, Inc.
in care of Wendell Birkland, Esq.
790 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204

     Re: Floyd Douglas Day
        Sherrie Day
        <u>Family Medical Management Services, Inc. and Related Clinics</u>

Dear Mr. Day:

   The United States Attorney's Office (USAO) proposes that this matter, as it relates to Family Medical Management Services, Inc., be resolved as follows:[1]

   1.  Family Medical Management Services, Inc., ("Family Medical" or the "defendant") agrees to waive indictment and agrees to plead guilty to a two count felony Information, a copy of which is attached as Exhibit A. Count One of the Information charges Family Medical with health care fraud targeting the TRICARE program, in violation of 18 U.S.C. § 1347. Count Two of the Information charges Family Medical with health care fraud targeting the Medicare program, in violation of 18 U.S.C. § 1347.

   2.  Counts One and Two each carry a maximum penalty of a fine of $500,000 or twice the pecuniary gain derived by Family Medical (18 U.S.C. § 3571), a term of probation of not less than one nor more than five years (18 U.S.C. § 3561(c)), and a $400 special fee assessment (18 U.S.C. § 3013). The defendant agrees to pay the special assessment prior to sentencing.

   3.  The defendant agrees that

     (A) during the period 1998 through 2003, Family Medical operated health care clinics in Oregon and Washington. At various times, and through related companies, Family Medical operated clinics in Portland, Salem, and Aloha, Oregon, as well as in Vancouver, Washington.

---

   [1]  This plea agreement is between this United States Attorney's Office and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement does not apply to any other charges other than those specifically mentioned herein.

Mr. Vance D Day (for Family Medical)
February 23, 2005
Page 2

(B) Beginning in approximately 1997, clinics operated by Family Medical provided health care services to beneficiaries of two federal health care programs: the TRICARE program, which benefits primarily military service people and their families, and the Medicare program, which benefits primarily elderly and disabled Americans.

(C) To obtain reimbursement for providing services to TRICARE and Medicare beneficiaries, Family Medical regularly filed claims for reimbursement from TRICARE and Medicare.

(D) Family Medical provided the vast majority of its health care services by hiring nurse practitioners and physician's assistants to see and treat patients at its clinics.

(E) During the period 1998 through March 2003, Family Medical fraudulently claimed that a physician had performed nearly all of its health care services, when in fact a physician performed only a fraction of the services, and the vast majority of the services was provided by nurse practitioners and physician's assistants. Family Medical was thus reimbursed at the higher physician rate for services in fact provided by nurse practitioners and physician's assistants.

(F) Family Medical had its billing software altered so that in generating claims for reimbursement from TRICARE and Medicare, the software automatically replaced the name of the provider who actually provided the service with the name and provider identification number of the clinic's sole physician. Although the billing software was altered to show a physician as the service provider, staff at Family Medical knew which providers had actually provided the services.

(G) During the period 1998 through March 2003, Family Medical filed in excess of 6,300 claims for reimbursement from TRICARE in which Family Medical fraudulently claimed that the services claimed had been provided by a physician, when in fact the services had been provided by a nurse practitioner or physician's assistant. The fraudulent claims resulted in an overpayment to Family Medical of approximately $161,825 by TRICARE during the period 1998 through March 2003.

(H) During the period 1998 through March 2003, Family Medical filed in excess of 6,100 claims for reimbursement from Medicare in which Family Medical fraudulently claimed that the services had been provided by a physician, when in fact the services had been provided by a nurse practitioner or physician's assistant. The fraudulent claims resulted in an overpayment of approximately $37,923 by Medicare during the period 1998 through March 2003.

Mr. Vance D. Day (for Family Medical)
February 23, 2005
Page 3

4.      The parties agree that pursuant to <u>United States v. Booker/Fanfan</u>, 543 U.S.
___, 125 S.Ct. 738 (2005), the court must determine an advisory sentencing guideline range
pursuant to the United States Sentencing Guidelines (USSG).   The court will then determine a
reasonable sentence within the statutory range after considering the advisory sentencing guideline
range and the factors listed in 18 U.S.C. § 3553(a).

5.      (A)  <u>Base Fine</u>: Based on information known to the USAO at this time, the USAO
estimates the likely adjusted offense level under the Sentencing Guidelines to be level 13, and a
culpability score of 5.  This calculation leads to a fine range of $60,000 to $120,00. (<u>see</u> U.S.S.G.
§ 8C2.7).  However, as set forth below in paragraph 11, the defendant must enter an agreement
with the government both to repay the actual loss and pay certain fines.  Accordingly, in light of
the civil agreement to resolve the defendant's liability, the government agrees that an additional
criminal fine is not appropriate.

6.      The Guidelines estimate set forth in paragraph 5 is not binding on the Probation
Department or the Court.  If the Guidelines offense level determined by the Probation
Department or the Court is different from the estimate, the defendant will not be entitled to
withdraw the plea.

7.      The defendant agrees to resolve any outstanding tax liability for tax years 1999
through 2004 (inclusive), and to this end, agrees to the following conditions:

> (A) The defendant agrees to undergo an independent audit of taxes owed for tax
> years 1999 - 2004 (inclusive);
>
> (B) the independent audit will be conducted at your client's expense;
>
> (C) the independent auditor selected must be approved in advance of selection by
> the USAO;.
>
> (D) the defendant expressly consents to permit the USAO and agents of the FBI to
> brief the independent auditor regarding your client's taxes, including information
> obtained from the Internal Revenue Service;
>
> (E) the independent auditor will prepare a report which will be made available to
> the USAO;
>
> (F) the independent auditor's report will specify what, if any, tax returns and/or
> amended tax returns must be filed in order to come into compliance with state and
> federal law and to resolve any outstanding tax liability with the state or federal
> government;

Mr. Vance D. Day (for Family Medical)
February 23, 2005
Page 4

      (G) the defendant will file any tax returns and/or amended tax returns specified by the independent auditor as required for compliance with state and federal law.

      (H) the independent audit and filing of any tax returns and/or amended returns specified by the independent auditor's report shall be completed within six months of the execution of this agreement; however, the government, in its sole discretion, will agree to reasonable extension of this deadline upon a showing of good cause.

8.      In exchange for the agreements set forth above, the USAO agrees to:

      (A)      Recommend a one level adjustment  for acceptance of responsibility, pursuant to USSG §§ 8C2.5(g)(3).  The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, acts inconsistent with acceptance of responsibility.

      (B)      Recommend a fine at the bottom end of the guideline range.

      (C)      Bring no further criminal charges against the defendant for its heretofore disclosed role in filing fraudulent claims for reimbursement from federal health plans undertaken during the time period 1997 through 2003, it being understood that this agreement does not bar the use of such.

      (D)      Bring no criminal charges for conduct related to non-payment and underpayment of federal taxes during the period 1999 - 2004, it being understood that this waiver of prosecution is contingent upon satisfactory completion of the internal audit and tax liability resolution required in paragraph 8 above, and that failure to satisfy these requirements shall render this waiver of prosecution null, void, and non-binding.

9.      Defendant knowingly, intelligently, and voluntarily waives its right to appeal its conviction in this case.  Defendant similarly knowingly, intelligently, and voluntarily waives its right to appeal the sentence imposed by the court, provided the sentence is no greater than the maximum estimated in paragraph 5 ($120,000).  In addition, defendant knowingly, intelligently, and voluntarily waives its right to bring a collateral challenge pursuant to 28 U.S.C. § 2255, against either its conviction, or the sentence imposed in this case, except for a claim of ineffective assistance of counsel.  The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn.

Mr. Vance D. Day (for Family Medical)
February 23, 2005
Page 5

10.    The USAO will fully inform the PSR writer and the court of the facts and law related to defendant's case.  Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

11.    This is a global plea offer and is expressly and wholly contingent on the following taking place no later than March 1, 2005:

(A) execution of the Settlement Agreement by the defendant's owners, Floyd Douglas Day and Sherrie Day, a copy of which is attached as Exhibit B, by all signatories, resolving the government's civil fine, forfeiture and restitution demands against Family Medical Management Services, Inc. and its owners;

(B) entry of a guilty plea by Sherrie Day to charges set forth in the draft Information attached as Exhibit C, and acceptance of the guilty plea by a United States District Judge; and

(C) execution of a non-prosecution agreement by Floyd Douglas Day, attached as Exhibit D, which provides, among other things, for the voluntary exclusion of Floyd Douglas Day from the TRICARE and Medicare health plans.

12.    This is the full agreement of the parties, and no further agreement should be inferred unless agreed to in writing.

My understanding from you is that you have discussed this resolution and your client is in agreement.   Please confirm that by returning to me a copy of this document signed by your client.

Very truly yours,

KARIN J. IMMERGUT
United States Attorney

by: _____
DWIGHT C. HOLTON
Assistant United States Attorney

Mr. Vance D. Day (for Family Medical)
February 23, 2005
Page 6

## Acceptance of ~~Non-Prosecution~~ Agreement

*PLEA*

I HAVE READ THIS AGREEMENT CAREFULLY AND REVIEWED EVERY PART
OF IT.  I UNDERSTAND AND VOLUNTARILY AGREE TO IT AS OUTLINED ABOVE.

DATE: _3/1/05_

_____
VANCE D. DAY
Attorney for Family Medical
Management Services, Inc.

# SETTLEMENT AGREEMENT

## I. PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the TRICARE Management Activity (TMA) through its General Counsel, (collectively the "United States"); and Floyd Douglas Day, M.D. (Dr. Day), Sherrie A. Day (Mrs. Day), and Family Medical Management Services, Inc., its affliates, subsidiaries, successors and assigns (FMMS), (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.    FMMS is an Oregon corporation which operated five primary care health clinics in Oregon and Washington.  At various times, and through related companies, FMMS operated clinics in Portland, Salem and Aloha, Oregon, as well as in Vancouver, Washington. FMMS is wholly owned by Dr. Day and Mrs. Day.

B.    Dr. Day is a licensed physician, practicing and providing internal medicine and family practice services as a general practitioner and serving as the medical director for FMMS's five clinics in the States of Oregon and Washington.  Dr. Day is an enrolled TRICARE and Medicare health care provider in the States of Oregon and Washington, subject to federal and state laws and regulations related to the billing of products and services to Federal health care programs.

C.    Mrs. Day, served as the business administrator for FMMS's five medical clinics.

D.    The United States contends that the Days and FMMS submitted or caused to be submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg and the TRICARE Program (formerly known as the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS)), 10 U.S.C. §§ 1071-1109.

E.    The United States contends that it has certain civil claims, as specified in Paragraph 2 below, against the Days and FMMS for engaging in the following conduct during the period from January 1998 to December 2002: 1) Dr. Day, acting with actual knowledge, with deliberate ignorance, or with reckless disregard, submitted or caused to be submitted, in excess of 13,000 claims to the Medicare and TRICARE programs, for the provision of internal medicine and family practice services to patients, when in fact those medical services were not provided by Dr. Day, but by nurse practitioners and physician assistants, whose services would have been reimbursed by TRICARE and Medicare at a lower rate; and 2) Mrs. Day, acting with actual knowledge, with deliberate ignorance, or with reckless disregard, submitted or caused to be submitted, in excess of 13,000 claims to the Medicare and TRICARE programs, for the provision of internal medicine and family practice services to patients, when in fact those medical services were not provided by Dr. Day, but by nurse practitioners and physician assistants, whose services would have been reimbursed by TRICARE and Medicare at a lower rate; and 3) FMMS, acting with actual knowledge, with deliberate ignorance, or with reckless disregard, submitted or caused to be submitted, in excess of 13,000 claims to the Medicare and TRICARE programs, for the provision of internal medicine and family practice services to patients, when in fact those medical services were not provided by Dr. Day, but by nurse practitioners and physician

-2-

assistants, whose services would have been reimbursed by TRICARE and Medicare at a lower

rate (hereinafter referred to as the "Covered Conduct").

       F.     This Agreement is neither an admission of liability by the Days and/or

FMMS nor a concession by the United States that its claims are not well founded.  Specifically,

Dr. Day disputes the United States' contention that he acted with actual knowledge, with

deliberate ignorance, or with reckless disregard in connection with the Covered Conduct.

       G.     To avoid the delay, uncertainty, inconvenience, and expense of protracted

litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms

and Conditions below.

### III. <u>TERMS AND CONDITIONS</u>

       1.     The Days and FMMS agree to pay to the United States $400,000.00 (the

"Settlement Amount").  The Days and FMMS agree to pay the Settlement Amount by electronic

funds transfer pursuant to written instructions to be provided by the United States Attorney's

Office for the District of Oregon.  The Days and FMMS agree to make this electronic funds

transfer within thirty (30) days of the Effective Date of this Agreement.  Within that period the

Days and FMMS may request an extension of this payment date, but in no event shall the

payment due date be extended beyond the sentencing date set for Mrs. Day in the companion

criminal matter.

       2.     Subject to the exceptions in Paragraph 6 below, in consideration of the

obligations of the Days and FMMS set forth in this Agreement, conditioned upon the Days and

FMMS's full payment of the Settlement Amount, and subject to Paragraph 15 below (concerning

bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement), the

Settlement Agreement between
United States and DAYS and FMMS        - 3 -

United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release

the Days and FMMS from any civil or administrative monetary claim the United States has or

may have under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties

Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or

the common law theories of payment by mistake, unjust enrichment, and fraud, for the Covered

Conduct.

      3.    OIG-HHS expressly reserves all rights to institute, direct, or to maintain

any administrative action seeking exclusion against Sherrie A. Day and/or FMMS, and/or its

officers, directors and employees from Medicare, Medicaid, or other Federal health care

programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory

exclusion), or 42 U.S.C. § 1320a-7(b) (permissive exclusion).

      4.    In compromise and settlement of the rights of TMA to exclude Floyd Day,

Sherrie Day and FMMS pursuant to 32 C.F.R. 199.9(f)(1) for the Covered Conduct, Floyd Day,

Sherrie Day and FMMS agree to be excluded under TRICARE's authority for a period of five

years. This period to be effective and commence on the effective date of the Agreement. Floyd

Day, Sherrie Day and FMMS agree not to contest the TRICARE exclusion either

administratively or in any State or Federal court. Floyd Day, Sherrie Day and FMMS represent

and agree that unless and until reinstated into TRICARE, Floyd Day, Sherrie Day and FMMS do

not intend to and will not: (a) hold a direct or indirect ownership interest of five percent or more

in any entity that submits claims for payment to any Federal health care program; (b) own a

whole or part interest in any mortgage, deed of trust, note or other obligation secured by any such

entity or any of the property or assets thereof, in which whole or part interest is equal to or

exceeds five percent of the total property and assets of such entity; or (c) be an officer, director,

partner, agent, or managing employee of any such entity.  Dr. Day, Sherrie Day and FMMS shall

divest themselves of ownership of any such entity no later than the date of Sherrie Day's

sentencing.  Upon completion of the exclusion period, Floyd Day, Sherrie Day and FMMS may

apply for TRICARE reinstatement in accordance with 32 C.F.R. 199.9(h)(iv).

   5.  In compromise and settlement of the rights of OIG-HHS to exclude Floyd

Douglas Day, M.D. (Dr. Day) pursuant to 42 U.S.C. § 1320a-7(b)(7), Dr. Day agrees to be

excluded under this statutory provision from Medicare, Medicaid, and all other Federal health

care programs as defined in 42 U.S.C. § 1320a-7b(f), for a period of five years.  Such exclusion

shall have national effect and shall also apply to all other Federal procurement and non-

procurement programs.  Federal health care programs shall not pay anyone for items or services,

including administrative and management services, furnished, ordered or prescribed by Dr. Day

in any capacity while Dr. Day is excluded.   This payment prohibition applies to Dr. Day, anyone

who employs or contracts with Dr. Day, any hospital or other provider where Dr. Day provides

services, and anyone else.  This exclusion applies regardless of who submits the claims or other

request for payment.  Dr. Day shall not submit or cause to be submitted to any Federal health care

program any claim or request for payment for items or services, including administrative and

management services, furnished, ordered, or prescribed by Dr. Day during the exclusion.

Violation of the conditions of the exclusion may result in criminal prosecution, the imposition of

civil monetary penalties and assessments, and an additional period of exclusion.  Dr. Day further

agrees to hold the Federal health care programs, and all Federal beneficiaries and/or sponsors,

harmless from any financial responsibility for items or services furnished, ordered, or prescribed

to such beneficiaries or sponsors after the effective date of the exclusion.  Dr. Day waives any

further notice of the exclusion and agrees not to contest such exclusion either administratively or

in any state or federal court.  Reinstatement to program participation is not automatic.  If at the

end of the period of exclusion, Dr. Day wishes to apply for reinstatement, Dr. Day must submit a

written request for reinstatement in accordance with the provisions of 42 C.F.R. §§ 1001.3001-

3005.  This exclusion shall commence upon the Effective Date of this Agreement.

6.      Floyd Day, Sherrie Day and FMMS further agree to hold the Federal

programs and all the Federal programs' beneficiaries and/or sponsors harmless from any

financial responsibility for services reimbursable by Federal health care programs furnished to

such beneficiaries and/or sponsors while Floyd Day, Sherri Day and FMMS are excluded.  Floyd

Day, Sherrie Day and FMMS specifically waive their rights under any statute or regulation to

payment for services rendered that are reimbursable by Federal health care programs from

Medicare, Medicaid, or TRICARE or the United States Department of Veteran Affairs or the

United States Office of Personnel Management during the period of exclusion.

7.      Notwithstanding any term of this Agreement, specifically reserved and

excluded from the scope and terms of this Agreement as to any entity or person (including the

Days) are the following:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue

Code);

b.      Any criminal liability for the Covered Conduct for the Days, which

liability is the subject of separate agreements between the United States Attorney for the District

of Oregon and Dr. Day, Sherri Day and FMMS;

     c.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

     d.     Any liability based upon such obligations as are created by this Agreement;

     e.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services; and

     f.     Any liability for failure to deliver goods or services due.

8.     The Days and FMMS waive and will not assert any defenses the Days and/or FMMS may have to any criminal prosecution or administrative action relating to the Covered Conduct, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. The Days and FMMS agree that this Agreement is not punitive in purpose or effect.  Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9.     The Days and FMMS fully and finally release the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which the Days and FMMS have asserted, could have asserted, or may assert in the future against the United States, its agencies, employees,

servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

      10.    The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any TRICARE payer or any State payer, related to the Covered Conduct; and the Days and/or FMMS shall not resubmit to any Medicare carrier or intermediary, any TRICARE payer, or any State payer any previously denied claims related to the Covered Conduct, and shall not appeal any such denials of claims.

      11.    The Days and FMMS agree to the following:

      a.    <u>Unallowable Costs Defined:</u> that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47, and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg and 1396-1396v, and the regulations and official program directives promulgated thereunder) incurred by or on behalf of the Days and FMMS, their present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "unallowable costs" on government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

      (1) the matters covered by this Agreement, the related plea agreement, and the non-prosecution agreement between Dr. Day and the United States Attorney's Office for the District of Oregon,

      (2) the United States' audit and civil and criminal investigations of the matters covered by this Agreement,

Settlement Agreement between
United States and DAYS and FMMS      - 8 -

(3) The Days and FMMS's investigation, defense, and corrective actions undertaken in response to the United States' audit and civil and criminal investigations in connection with the matters covered by this Agreement (including attorney's fees),

(4) the negotiation and performance of this Agreement, the plea agreement, and the non-prosecution agreement between Dr. Day and the United States Attorney's Office for the District of Oregon, and

(5) the payment the Days and FMMS make to the United States pursuant to this Agreement and any payments that the Days and/or FMMS may make to relators, including costs and attorneys fees.

b.    Future Treatment of Unallowable Costs:  These unallowable costs shall be separately determined and accounted for by the Days and FMMS, and the Days and FMMS shall not charge such unallowable costs directly or indirectly to any contracts with the United States or any state Medicaid program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by the Days and FMMS or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.    Treatment of Unallowable Costs Previously Submitted for Payment: The Days and FMMS further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid, VA and FEHBP fiscal agents, any unallowable costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid Program, including, but not limited to, payments sought in any cost reports,

cost statements, information reports, or payment requests already submitted by the Days and/or FMMS or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. The Days and FMMS agree that the United States, at a minimum, shall be entitled to recoup from the Days and/or FMMS any overpayment plus applicable interest and penalties as a result of the inclusion of such unallowable costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by the Days and/or FMMS or any of its subsidiaries or affiliates on the effect of inclusion of unallowable costs (as defined in this Paragraph) on the Days and FMMS's or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

        d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the Days and FMMS's books and records to determine that no unallowable costs have been claimed in accordance with the provisions of this Paragraph.

       12.      This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 13 below.

13.     The Days waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

14.     The Days and FMMS warrant that they have reviewed their financial situation and that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and will remain solvent following their payment to the United States of the Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the Days and FMMS, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended and do, in fact, represent a reasonably equivalent exchange of value which is not intended to hinder, delay, or defraud any entity to which the Days and/or FMMS were or became indebted, on or after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a)(1).

15.     If, within 91 days of the Effective Date of this Agreement or of any payment made hereunder, the Days and/or FMMS commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, (a) seeking to have any order for relief of the Days and/or FMMS's debts, or seeking to adjudicate the Days and/or FMMS as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for the Days and/or

FMMS or for all or any substantial part of the Days and/or FMMS's assets, the Days and FMMS agree as follows:

a. The Days and FMMS's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. §§ 547 or 548, and the Days and FMMS will not argue or otherwise take the position in any such case, proceeding, or action that: (1) the Days and FMMS's obligations under this Agreement may be avoided under 11 U.S.C. §§ 547 or 548; (2) the Days and/or FMMS were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States hereunder; or (3) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to the Days and FMMS.

b. If the Days and FMMS's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement, and bring any civil and/or administrative claim, action, or proceeding against the Days for the claims that would otherwise be covered by the releases provided in Paragraph 2, above. The Days and FMMS agree that (1) any such claims, actions, or proceedings brought by the United States (including any proceedings to exclude the Days and/or FMMS from participation in Medicare, Medicaid, or other Federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceeding described in the first clause of this Paragraph, and that the Days and FMMS will not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (2) that the Days and FMMS will not plead, argue, or otherwise raise any

defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding which are brought by the United States within 180 calendar days of written notification to the Days and FMMS that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the effective da...  'this Settlement Agreement; and (3) the United States has a valid claim against the Days and FMMS in the amount of $600,000.00, plus penalties as provided by statute, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c. The Days and FMMS acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

16. Each Party to this Agreement shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17. The Days and FMMS represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

18. This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement shall be the United States District Court for the District of the District of Oregon.

19. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20.     The individuals signing this Agreement on behalf of the Days and FMMS represent and warrant that they are authorized by the Days and FMMS to execute this Agreement. The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

21.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

22.     This Agreement is binding on the Days and FMMS's successors, transferees, heirs, and assigns.

23.     All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24.     The "Effective Date" of this Agreement shall be the date of signature of the last signatory to the Agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 3/1/05          BY: _____
                           ROBERT D. NESLER
                           **Assistant United States Attorney**
                           **District of Oregon**


DATED:_____        BY: _____
                           **LEWIS MORRIS**
                           **Chief Counsel to the Inspector General**
                           **Office of Counsel to the Inspector General**
                           **Office of Inspector General**
                           **United States Department of**
                           **  Health and Human Services**


DATED:_____        BY: _____
                           **LAUREL C. GILLESPIE**
                           **Deputy General Counsel**
                           **TRICARE Management Activity**
                           **United States Department**
                           **    of Defense**

## FOR THE DAYS - DEFENDANTS

DATED: _2/26/05_   BY: _Floyd Douglas Day, MD_
**FLOYD DOUGLAS DAY, M.D.**

DATED: _3/1/05_   BY: _Wendell R Birkland_
**WENDELL R. BIRKLAND**
**Counsel for Floyd Douglas Day, M.D.**

DATED: _3/1/05_   BY: _____
**VANCE D. DAY**
**Counsel for FAMILY MEDICAL**
**MANAGEMENT SERVICES, INC.**

DATED: _3/1/05_   BY: _Sherrie a Day_
**SHERRIE A. DAY**

DATED: _3/1/05_   BY: _____
**WHITNEY P. BOISE**
**Counsel for Sherrie A. Day**

Settlement Agreement between
United States and DAYS and FMMS         - 16 -

## ORDER ENTERING PLEA

I find that the defendant's plea of GUILTY has been made freely and voluntarily and not out of ignorance, fear, inadvertence, or coercion. I further find the defendant has admitted facts that prove each of the necessary elements of the crime(s) to which the defendant has pled guilty.

IT IS THEREFORE ORDERED that the defendant's plea of GUILTY be accepted and entered as requested in this Petition and as recommended in the Certificate of defendant's attorney.

DATED this 1st of March 2005, 199__, in open court.

_____
Judge, U.S. District Court

**Page 9 - ORDER ENTERING PLEA**